IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |  |
|---|---|---|
| | : | |
| RODNEY E. UNSWORTH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Action No. 2:16-cv-00699 |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner, | : | |
| Social Security Administration, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATION

Plaintiff Rodney E. Unsworth ("Plaintiff") filed a complaint, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), that seeks judicial review of the final decision of the Defendant, Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner"), which denied Plaintiff's claim for Disability Insurance Benefits ("DIB") pursuant to Title II, and his claim for Supplemental Social Security Income ("SSI") pursuant to Title XVI, of the Social Security Act. On April 5, 2017, Plaintiff filed his Motion for Summary Judgment and brief in support. ECF Nos. 13-14. On May 4, 2017, the Commissioner filed her Motion for Summary Judgment and brief in support (ECF Nos. 15-16), to which Plaintiff filed a Reply on May 16, 2017 (ECF No. 17) because according to Plaintiff "[i]n her Opposition Memorandum, the Commissioner made several assertions which require a response." ECF No. 17 at 2. The parties' Motions for Summary Judgment are now ripe and ready for disposition.

This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges.  For the following reasons, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment, ECF No. 13, be **GRANTED** to the extent it seeks reversal and remand of the Commissioner's decision and **DENIED** to the extent that it seeks entry of an order directing the award of benefits; the Commissioner's Motion for Summary Judgment, ECF No. 15, be **DENIED**; and the Commissioner's decision be **VACATED** and **REMANDED**

## I. PROCEDURAL BACKGROUND

Plaintiff filed a protective application for DIB on August 1, 2012 and an application for a period of disability on August 4, 2012.  R. at 59.[1]   In both applications, Plaintiff alleged a disability onset date of October 15, 2010.  R. at 59.  This application was initially denied on February 12, 2013, R. at 59, and denied again upon reconsideration on November 26, 2013, R. at 158.  On December 31, 2013, Plaintiff requested a hearing in front of an Administrative Law Judge, R. at 59, which was held before Administrative Law Judge William T. Vest, Jr. ("the ALJ") on May 14, 2015, R. at 59.  The ALJ issued his decision on May 29, 2015, denying Plaintiff's application.  R. at 66.  On October 11, 2016, the Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Plaintiff's December request for review of the ALJ's decision. R. at 1, 6.  After exhausting his administrative remedies, Plaintiff filed his complaint for judicial review of the Commissioner's final decision on December 5, 2016.  ECF

---

[1] "R." refers to the certified administrative record that was filed under seal on February 27, 2017, ECF No. 8, pursuant to Local Civil Rules 5(B) and 7(C)(1).

No. 1. The Commissioner filed an answer on February 27, 2017. ECF No. 7. Both parties filed motions for summary judgment, ECF Nos. 13 and 15, and the matter is now ripe for recommended adjudication.

## II. RELEVANT FACTUAL BACKGROUND

In his applications, filed August 1, 2012 and August 4, 2012, Plaintiff alleged a disability onset date of October 15, 2010. R. at 59. At the time of the ALJ's decision, Plaintiff was a forty-five year old man with a high school education, who had completed two years of college, with previous employment as a dock maintenance worker and an electrician. R. at 66, 74, 95. At the May 14, 2015 hearing, Plaintiff supplemented his medical records by providing additional information via testimony. The record included the following factual background for the ALJ to review:

Plaintiff is divorced and has no children. R. at 196. Since 2010, he has lived alone in Chesapeake, Virginia in a house owned by his parents and his parents live next-door. R. at 93, 205. Plaintiff worked as a ship repair electrician from September 2010 until October 15, 2010, at which time Plaintiff sustained a back injury while assembling a cabinet at work. R. at 75. However, prior to this date, Plaintiff has an extensive record of complaints and alleged symptoms stemming from psoriasis, from which he has suffered since he was a teenager. R. at 413-38. At the hearing, Plaintiff testified that he takes prescription medication for his psoriasis, but no pain medication for his back. R. at 63, 79. Plaintiff reported that immediately prior to his October 15, 2010 work injury, he had been prescribed methotrexate, which Plaintiff describes as a "miracle drug" for his psoriasis, and also helps with the inflammation of his back. R. at 84, 93.

3

Plaintiff's alleged onset date, October 15, 2010, stems from a work injury he sustained when lifting a cabinet. R. at 75. According to Plaintiff, he was squatting down to move the position of the cabinet when the weight of the cabinet shifted and Plaintiff moved to catch it. R. at 75. On October 26, 2010, Plaintiff was diagnosed with left sacroiliac joint sprain and referred for physical therapy. R. at 311-12. On November 23, 2010, Plaintiff returned for a follow-up and reported that he was making no progress in physical therapy. R. at 310. At that time, Dr. Richard D. Guinand cleared Plaintiff for light duty with a restriction on lifting more than ten pounds, arranged for an MRI to be performed, and directed Plaintiff to continue with physical therapy. R. at 310. In August 2011, after failed conservative treatment, including physical therapy, epidural steroid injections, and lumbar facet injections, R. at 354, Dr. David G. Goss ("Dr. Goss") performed a laminectomy and decompression, R. at 63. Post-surgery, Plaintiff continued to experience lower back pain and it was recommended that he have a second surgery to "re-do" the first surgical intervention. R. at 283. At the May 14, 2015 hearing, Plaintiff indicated his intention to return to Dr. Goss "next week" to discuss a second surgery. R. at 78.

Plaintiff reported that he can walk approximately fifty (50) feet before experiencing significant pain and can only sit or stand for a couple of minutes. For the majority of his day, Plaintiff has to lie on the couch with his legs in an upright position to achieve relief from his back pain. R. at 63, 82. Plaintiff experiences additional minimal relief from soaking in the shower for approximately one hour, at least three times a day, beginning first thing in the morning. R. at 91. In response to questioning by the ALJ, Plaintiff stated that he has good days where he is "okay", but has approximately twenty bad days in a thirty day month, during which time he is "dependent totally 100 percent" on his mother for dressing and bathing himself. R. at

4

83, 92. He also stated that he relies on his mother for chores and housework such as doing laundry and grocery shopping because he "can't carry a gallon of milk." R. at 82. Plaintiff's mother also buys his groceries. R. at 93, 205. Plaintiff reports that at least once or twice a month, Plaintiff has to be taken to the emergency room in an ambulance because his back pain renders him incapable of moving. R. at 92.

In addition to physical ailments, Plaintiff alleges that he suffers from anxiety disorder. Beginning in September 2011 Plaintiff's medical records are significant for references to this disorder. On September 27, 2011, Plaintiff reported feeling anxious to Dr. Goss. R. at 291. On July 26, 2012, Plaintiff again informed Dr. Goss that he is experiencing anxiety. On August 2, 2013, Plaintiff again stated to Dr. Goss that he is experiencing anxiety. R. at 275. Plaintiff similarly reported his anxiety to Dr. Tracey Pennington, M.D. ("Dr. Pennington") on three separate occasions: June 3, 2013 (R. at 349), July 1, 2013 (R. at 356), and September 16, 2013 (R. at 363). Plaintiff's records from Dr. Ran Vijai Singh's ("Dr. Singh") office also include historical diagnoses of depressive disorder, not elsewhere classified, panic disorder without agoraphobia, and substance abuse, as well as a past suicide attempt when Plaintiff was eighteen. R. at 399, 401.

Plaintiff's medical records reveal a history of narcotics abuse. R. at 399. Specifically, Plaintiff's treatment with Dr. Spear for pain management ended on July 17, 2012 when the physician discharged Plaintiff due to Plaintiff's noncompliance with the narcotics agreement. R. at 84. On or about October 17, 2013, Plaintiff's treatment with Dr. Pennington was similarly discontinued when Dr. Pennington discharged Plaintiff for noncompliance with the opioid medication agreement. R. at 386. Based on two separate urine screens and Plaintiff's self-

5

reporting, Dr. Pennington determined that Plaintiff was not taking the narcotics on a daily basis as prescribed, namely, by stockpiling pills, which violated the pain management agreement executed by Plaintiff. R. at 390-91.

Plaintiff received Worker's Compensation benefits from October 27, 2010 until July 18, 2012. R. at 86. Benefits were terminated due to noncompliance when Plaintiff was allegedly unable and unwilling to comply when directed to return to his previous employer as a security guard because he claimed that due to his back pain, he was unable to sit and stand as required by the job. R. at 86-91.

At the hearing, Robin Stromberg, an impartial Vocational Expert ("VE") also testified. R. at 95. During her testimony, the VE recounted Plaintiff's prior employment history, which was significant for medium duty skilled employment as an electrician, as well as heavy duty semiskilled employment as a shift maintenance and dock maintenance worker. R. at 95. The ALJ presented the VE with a hypothetical assuming an individual with an RFC that would allow for sedentary work, with no climbing or crawling, and occasional stooping or squatting, and limited to simple, repetitive tasks, if such hypothetical individual had the same age, education, and work experience as Plaintiff. R. at 95. The VE testified that available jobs included an officer helper, of which there were approximately 99,000 positions available, a general information clerk, of which there were approximately 86,000 positions available, and an interviewer, of which there were approximately 33,000 positions available, and that such jobs comported with the Dictionary of Occupational Titles. R. at 95-96. When Plaintiff's counsel was given an opportunity to question the VE regarding the availability of those same jobs if the hypothetical individual needed to miss three to four days of work per month due to back pain and

6

if such individual needed to elevate his legs at least twenty inches, the VE testified that those jobs would not be available. R. at 96.

### III. **THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Acting Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Acting Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if "(1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment." *Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v.*

*Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

Under this five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since October 15, 2010, the date of his work injury and the date of his alleged onset of disability. R. at 61.

Second, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease ("DDD") and obesity. R. at 61. The ALJ concluded these physical impairments "significantly limit [Plaintiff's] ability to perform basic work activities" Plaintiff's DDD and obesity "represent severe impairments within the meaning of the Social Security Act. R. at 62. The ALJ found that Plaintiff's medical history was also significant for three other alleged impairments—substance abuse, psoriasis, and psoriatic arthritis—but found these impairments do not significantly limit Plaintiff's ability to perform work. R. at 62. The ALJ employed an extensive analysis before rejecting Plaintiff's other alleged impairments as not severe. First, with regard to substance abuse, the ALJ noted that in October 2013 Plaintiff was discharged by his pain management specialist for abusing his pain medication, but Plaintiff testified that he no longer takes narcotic pain medication. R. at 61-62. With regards to the psoriasis and psoriatic arthritis, the ALJ found that Plaintiff's symptoms were well-controlled with medication management and that any recent symptoms were attributed to noncompliance with treatment. R. at 62. Ultimately, the ALJ found that these three other impairments (substance abuse, psoriasis, and psoriatic arthritis), were not severe because they did not exist for any continuous period of at least twelve months, were responsive to medication, did not require any significant medical

treatment, and did not result in any continuous exertional or non-exertional functional limitations. R. at 62. Inexplicably, and as discussed in greater detail in Part V, *infra*, the ALJ failed to consider Plaintiff's alleged mental health impairments, despite acknowledging at the beginning of the hearing that Plaintiff's disability application was based in part on his claimed "anxiety disorder." R. at 75.

Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled on of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 62. Specifically, the ALJ found that Plaintiff's back disorder did not meet or equal Listing 1.04. R. at 62. In order to meet this listing, Plaintiff's spinal condition must have been established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulted in the inability to ambulate effectively, as defined by 1.00B2b. R. at 62. The ALJ noted that in July of 2014, Plaintiff reported to the emergency room with complaints of lower back pain. Upon examination, the emergency room doctor found no localized midline tenderness to the cervical, thoracic, lumbar or sacral bodies. Although Plaintiff reported pain with back movement, he had no bony tenderness to the hip, his sensation was intact to light touch, his motor strength was equal and symmetric, and Plaintiff's reflexes were intact. R. at 62. The emergency room physician concluded that Plaintiff suffered from sciatica. R. at 62. The ALJ also reviewed the treatment records of Dr. Goss, the Spine Center of Chesapeake, Dr. Pennington, Dr. Singh, and Plaintiff's dermatologist before concluding that nothing in said records indicated that Plaintiff was unable to walk effectively. R. at 62, 70. As for his obesity, the ALJ found that after considering the applicability of SSR-02-1p

9

and its effect on Plaintiff's other impairments, nothing in the record shows complications satisfying those requirements. R. at 63.

Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform unskilled, sedentary work as defined in 20 C.F.R. § 404.1567(a), provided the work only involved occasional stooping and squatting, but no climbing or crawling and only work involving simple, routine, and repetitive tasks, "due to his chronic pain complaints." R. at 63-64. The ALJ performed a credibility analysis, noting that "[Plaintiff's] testimony regarding significant limitations is not well supported by the medical evidence of record," and found that Plaintiff "could not adequately explain the number of surgeries he had, the doctor who performed those surgeries or why he no longer took medication for symptom control." R. at 64. The ALJ found it significant that Plaintiff "has been discharged from pain management on two occasions due to abusing his narcotic medication." R. at 64.    The ALJ concluded that after considering the evidence, Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible," and that Plaintiff can perform unskilled sedentary work. R. at 63-64. The ALJ determined that Plaintiff was unable to perform his relevant past work as an electrician and ship worker, which were medium skilled and heavy semi-skilled levels, respectively. R. at 65.    Regardless, the ALJ found that sedentary, unskilled jobs existed in significant numbers in the national economy that Plaintiff could perform notwithstanding Plaintiff's limitations. R. at 65. The ALJ also noted that on the alleged disability onset date, Plaintiff was a "younger individual," between the ages of 18 and 44 as defined by 20 C.F.R. § 404.1563(c). R. at 65.   Plaintiff also has a high school

10

education and is able to communicate in English.  R. at 65 (citing 20 C.F.R. §§ 404.1564 and 416.964).

Finally, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs such as officer helper, general information clerk, and interviewer that exist in significant numbers in the national economy that Plaintiff could perform. R. at 65-66 (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)).  Therefore, the ALJ determined that Plaintiff was not under a disability from October 15, 2010, through May 29, 2015, the date of the ALJ's decision.  R. at 66.

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Acting Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th

11

.

.

Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

## V. ANALYSIS

**A. The ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to consider the work restrictions imposed by Plaintiff's doctors.**

In the first claim of error, Plaintiff argues that the ALJ's determination failed to abide by the criteria regarding the weight to be given to a medical source's opinion when he did not consider and evaluate the work restrictions imposed by Dr. Goss, Dr. Singh, and Dr. Pennington, and is therefore unsupported by substantial evidence. ECF No. 14 at 15-16. In support of his argument, Plaintiff cites to *Trimmer v. Astrue* for the principle that "when a physician offers specific restrictions or limitations . . . the ALJ must provide reasons for accepting or rejecting such opinions." *Trimmer v. Astrue*, No. 3:10CV639, 2011 WL 4589998, at \*4 (E.D. Va. Sept. 7, 2011), *report and recommendation adopted*, No. 3:10CV639, 2011 WL 4574365 (E.D. Va. Sept. 30, 2011).

On July 18, 2011, Dr. Goss recommended Plaintiff remain on "no duty" and this work restriction continued until approximately October 13, 2011. R. at 301, 294. Dr. Goss returned Plaintiff to light duty with "no lifting greater than 10 pounds" on or about November 21, 2011. R. at 290. It appears that Plaintiff remained on that work restriction throughout 2012, despite being unemployed and not working. On June 3, 2013, Dr. Pennington recommended continuing the work restrictions imposed by Dr. Goss. R. at 353. On September 16, 2013, Dr. Pennington recommended continuation with the work restrictions pursuant to the surgeon's

12

recommendations. R. at 363.[2] On November 11, 2013, Plaintiff was seen by Dr. Singh and Dr.

Singh authored a letter stating that Plaintiff was to "remain out of work due to surgery pending."

R. at 412. This is the most recent reference to a work restriction in Plaintiff's medical records.

The ALJ's decision makes no mention of Dr. Singh's recommended "no work" status. Rather,

the *only* mention of any doctor's recommended work restriction in the ALJ's decision is the

ALJ's observation that "Dr. Goss initially returned [Plaintiff] to light duty by December 2011."

R. at 64.

The ALJ's decision noted that Plaintiff "testified that he has not seen Dr. Singh since

2013 and will see Dr. Goss next week to discuss a second surgery." R. at 63. This gives rise to

the inference that the ALJ concluded that Dr. Singh was no longer a treating physician thus his

opinion should not be afforded deference, but the Court is left to guess as to what weight if any

the ALJ gave to Dr. Singh's November 11, 2013 opinion that Plaintiff should remain on no duty

status. Further, it appears that the ALJ *did* credit Dr. Singh's November 11, 2013 impression

that Plaintiff's "range of motion was good and he could heel, toe walk." R. at 64 (citing Exhibit

4F). "[W]hen a physician offers specific restrictions or limitations, as Dr. [Singh] has done, the

ALJ must provide reasons for accepting or rejecting such opinions. It does not appear that the

ALJ has done so in this case." *Trimmer v. Astrue*, No. 3:10CV639, 2011 WL 4589998, at \*4

(E.D. Va. Sept. 7, 2011), *report and recommendation adopted*, No. 3:10CV639, 2011 WL

4574365 (E.D. Va. Sept. 30, 2011). Accordingly, "[i]t is therefore not prudent to accept the

ALJ's dismissal of Dr. [Singh's] opinions without a more thorough explanation." *Id.* at \*5.

---

[2] The Court assumes Dr. Pennington's reference to "the surgeon" to be referring to Dr. Goss, who is the only
treating surgeon in Plaintiff's medical history.

In sum, the ALJ's decision is not supported by substantial evidence in the record and on remand for the additional reasons detailed in this Report and Recommendation, the ALJ must sufficiently articulate his findings and provide substantial evidence for accepting or rejecting Dr. Singh's November 2013 opinion regarding Plaintiff's work restriction. *See Trimmer v. Astrue*, No. 3:10CV639, 2011 WL 4589998, at *6 (E.D. Va. Sept. 7, 2011), report and recommendation adopted, No. 3:10CV639, 2011 WL 4574365 (E.D. Va. Sept. 30, 2011). *See also* 20 C.F.R. § 404.1527(b) (explaining that the ALJ "must consider *all* medical opinions in the record") (emphasis supplied).

## B. The ALJ failed to consider Plaintiff's mental health impairments.

In the second claim of error, Plaintiff argues that the ALJ's decision failed to mention, discuss or evaluate Plaintiff's documented mental impairments, including depression and anxiety. ECF No. 14 at 18. The failure to account for the effect of Plaintiff's impairments or combination of impairments violates the federal regulations:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, *we will consider the combined effect of all of your impairments* without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523 (emphasis added). Specifically, Plaintiff contends that although the ALJ acknowledged that Plaintiff's disability application included Plaintiff's anxiety disorder, the ALJ neither addressed it at the hearing in his questioning of Plaintiff, nor mentioned it anywhere in

14

his written decision. *See* R. at 75 ("Mr. Unsworth alleges disability based on . . . anxiety disorder.").

In *Mascio*, the Fourth Circuit found that the ALJ erred "by ignoring (without explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace." *Mascio v. Colvin*, 780 F.3d 632, 633 (4th Cir. 2015). The Fourth Circuit stated that for the ALJ to have corrected his error, he would have had to explain why Mascio's limitation in concentration, persistence, or pace does not translate into a limitation in Mascio's residual functional capacity. *Id.* at 638 (providing a sufficient example, such as stating that these mental limitations were not necessary to be considered because they do not affect her ability to work).

Furthermore, as noted by the *Mascio* Court, remand is not appropriate unless the ALJ did not provide an explanation as to why such inquiry was not included:

> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert.

*Mascio*, 780 F.3d at 638. This Court is thus tasked with determining whether the ALJ gave any explanation as to why he excluded Plaintiff's alleged mental impairments when questioning Plaintiff and the VE, and why his decision fails to even mention Plaintiff's anxiety or depressive disorder despite beginning the hearing with an acknowledgment of such. R. at 75 ("[Plaintiff] alleges disability based on degenerative disc disease, it would be the lumbar spine, and ***anxiety disorder***.") (emphasis added).

The Commissioner argues that the ALJ's duty to employ the special technique to evaluate mental impairments is only triggered "when the claimant first presents a colorable claim of

mental impairment." ECF No. 16 at 12 (citing *Gunnoe v. Colvin*, C.A. No. 2:15-cv-12145, 2016 WL 5346956 [at] *3-5 (S.D. W. Va. 2016); *Sesberry v. Astrue*, No. 3:08-cv-989-J-TEM, 2010 WL 653890 at *10 (E.D.N.C. May 12, 2008)). While the Commissioner concedes that Plaintiff's medical records indicate that he "complained of anxiety and depressive symptoms at various times in the record, [Plaintiff] did not seek psychological treatment and was not diagnosed with a mental impairment," nor did he "allege depression or anxiety as a disabling condition in his applications [or] provide testimony squarely presenting a mental impairment to the ALJ at the hearing." ECF No. 16 at 11.   Therefore, according to the Commissioner, the ALJ did not present a colorable claim of mental impairment, and the ALJ had no duty to employ the special evaluation technique or address the alleged condition in the decision. *See Meyer v. Colvin*, 754 F.3d 251, 257 (4th Cir. 2014) ("[A]n ALJ 'is not obligated to investigate a claim not presented at the time of the benefits application . . . and not offered at the hearing as a basis for disability.").

Despite the ALJ's express acknowledgment during the hearing that Plaintiff's disability applications were based in part on claim of an anxiety disorder, R. at 75, ("Mr. Unsworth alleges disability based on . . . anxiety disorder."), the Court finds that the ALJ provided no rationale for failing to raise the issue during his questioning of Plaintiff or the VE, and no such discussion was included in the ALJ's final decision. Therefore, the undersigned RECOMMENDS that remand is necessary for the ALJ to address the issue of Plaintiff's alleged mental impairments and provide an explanation of whether they qualified as severe. Even if Plaintiff's alleged anxiety disorder was not a severe impairment, it still must be addressed in relation to its effect on Plaintiff's RFC as determined by the ALJ. *See Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) ("But because the ALJ here gave no explanation, a remand is in order."); *Wedwick v.*

16

*Colvin*, No. 2:14CV267, 2015 WL 4744389, at *24 (E.D. Va. Aug. 7, 2015) (remanding because the ALJ did not properly question the VE regarding the claimant's ability to stay on task due to limitations in concentration, persistence, and pace); *Scruggs v. Colvin*, No. 3:14-CV-00466-MOC, 2015 WL 2250890, at *6 (W.D.N.C. May 13, 2015) ("The court finds that the facts here squarely align with *Mascio,* and as such, believes that remand is appropriate so that the ALJ may properly account for plaintiff's limitations in concentration, persistence, or pace."); *Morton-Thompson v. Colvin*, No. 3:14CV179 REP, 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) *report and recommendation adopted sub nom. Thompson v. Colvin*, No. 3:14CV179, 2015 WL 5561211 (E.D. Va. Sept. 14, 2015) (remanding because "the ALJ failed to discuss Plaintiff's ability to perform those relevant functions for a full workday.").

## C. The ALJ failed to properly perform a "function-by-function" analysis.

Plaintiff argues that ALJ erred in assessing his residual functional capacity because he did not conduct a function-by-function analysis, pursuant to *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), and therefore remand is appropriate. ECF No. 14 at 19. In *Mascio*, the Fourth Circuit observed that pursuant to Social Security Ruling 96–8p, 61 Fed.Reg. 34,474, 34,475 (July 2, 1996) ("SSR 96–8p") in determining a claimant's residual functional capacity the ALJ's "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing SSR 96–8p). "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). Here, the ALJ articulated Plaintiff's RFC and **then** concluded that the

limitations caused by Plaintiff's impairments were consistent with the RFC. However, as previously discussed in Section V.B., *supra*, the ALJ's decision failed to mention, much less determine the extent to which Plaintiff's alleged mental impairments limited his ability to perform substantial gainful employment, thereby rendering the Court unable to determine whether the hypothetical questions posed to the VE included all of Plaintiff's functional limitations as required to be useful. *See Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) ("[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.") (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989)) (alteration in original).

Defendant contends that given the lack of objective medical evidence supporting Plaintiff's claims of disability for all work, the ALJ sufficiently articulated the basis for the RFC he assigned to Plaintiff. ECF No. 16 at 14. In light of the Fourth Circuit's unambiguous mandate in *Mascio*, Defendant's position is not persuasive. The failure to address Plaintiff's mental impairments leaves the Court unable to assess to what extent, if any, these impairments had on Plaintiff's work-related functions. For the reasons stated herein and in the preceding section, the undersigned RECOMMENDS that remand is necessary for the ALJ to develop the record regarding Plaintiff's claimed mental impairments.

**D. The ALJ failed to adequately analyze whether Plaintiff met disability Listing 1.04.**

Plaintiff argues that the ALJ failed to perform the analysis required by *Radford v. Colin*, 734 F.3d 288 (4th Cir. 2013) because he did not sufficiently explain why the requirements of Listing 104A were not satisfied. In the administration of the Social Security Act, "[t]he Social

Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979)). As the Fourth Circuit has observed, "[a] claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)). "An impairment or combination of impairments is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment. . . . [Thus] [t]o establish medical equivalency, [Plaintiff] must present medical findings equal in severity to the Listing criteria." *Vest v. Astrue*, No. 5:11CV047, 2012 WL 4503180, at *3 (W.D. Va. Sept. 28, 2012) (citing 20 C.F.R. §§ 404.1526(a), 416.926(a); *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)) (internal citations omitted). Here, because Plaintiff has alleged DDD, the musculoskeletal listings, and specifically the listing that covers spine-related disorders, governs the ALJ's decision and the Court's review of the same. *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (explaining that "[a] claimant is entitled to a conclusive presumption that he is disabled if he can show that his disorder results in compromise of a nerve root or the spinal cord.") (citing 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04).

Listing 1.00 contains the introduction to statutorily prescribed musculoskeletal listings, under which Listing 1.04 falls. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00. *See also Vest v. Astrue*, No. 5:11CV047, 2012 WL 4503180, at *4 n.4 (W.D. Va. Sept. 28, 2012) ("An impairment meets the requirement of a Listing when it satisfies all of the criteria of that Listing, *including any relevant criteria in the introduction*, and meets the duration requirement.")

19

(citing 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3)) (emphasis added).  Under this umbrella listing, "loss of function" means "the inability to ambulate effectively on a sustained basis for any reason . . ." § 1.00(B)(2)(a).  Subsection 1.00(B)(2)(b) further defines ineffective ambulation by providing examples which include, but are not limited to

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping or banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.00(B)(2)(b).  "Thus, [Plaintiff] is required to prove that he is unable to ambulate effectively or perform fine and gross movements effectively in order to meet or medically equal Listing 1.04." *Vest v. Astrue*, No. 5:11CV047, 2012 WL 4503180, at *4 (W.D. Va. Sept. 28, 2012) (citing *McKoy v. Astrue*, No. 4:08–2329–CMC–TER, 2009 WL 2782457, at * 16 (D.S.C. Aug. 28, 2009) ("[I]t was not error for the ALJ to consider plaintiff's ability to ambulate effectively, as a threshold criterion, in determining whether plaintiff's impairment met the requirements of Listing 1.04A," as ineffective ambulation is a "critical factor to be considered under all of the Musculoskeletal System Listings" under § 1.00)).  On the subject of Plaintiff's ability to ambulate effectively, the ALJ stated:

> "[Plaintiff's] back disorder does not meet or equal the listing at 1.04.  To meet the listing, the claimant's [sic] must show that the back disorder resulting in compromising the nerve root (including the cauda equine) or the spinal cord with evidence of nerve root compression; spinal arachnoiditis; or lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.  The claimant reported to the emergency room in July 2014 with lower back pain.  Dr. Courtney Zydron examined the claimant and found no localized midline tenderness to the cervical, thoracic, lumbar or sacral bodies.  He had pain

20

with back movement, but no bony tenderness to the hip. The claimant's sensation was intact to light touch and his motor strength was equal and symmetric. His reflexes were intact. She found that he suffered from sciatica. (Exhibit 5F). Moreover, there is nothing in the record that indicates that he would not walk effectively. (Exhibits 1F-5F).

R. at 62. Additionally, in the body of his decision, the ALJ also noted that during his first visit with Dr. Pennington in June 2013, Plaintiff was "independent with mobility and had a stable gait pattern." R. at 64 (citing Exhibit 3F). *See also* R. at 349 ("Independent with mobility. Stable gait pattern."). This contradicts Plaintiff's contention that the ALJ "relied upon a single emergency room visit in July 2014." ECF No. 14 at 22.

The Court finds that although extremely superficial in his analysis, the ALJ *did* explain that Plaintiff failed to meet this listing because of the lack of evidence that Plaintiff is unable to ambulate effectively. It is axiomatic that ineffective ambulation is required to meet this listing. *See Vest v. Astrue*, No. 5:11CV047, 2012 WL 4503180, at *4 (W.D. Va. Sept. 28, 2012) ("Thus, [Plaintiff] is required to prove that he is unable to ambulate effectively or perform fine and gross movements effectively in order to meet or medically equal Listing 1.04.") (citing *McKoy v. Astrue,* No. 4:08–2329–CMC–TER, 2009 WL 2782457, at * 16 (D.S.C. Aug. 28, 2009)). The ALJ's general reference to the medical records in support of his conclusion regarding the evidence of Plaintiff's ability to ambulate effectively does not render the ALJ's ultimate opinion invalid or otherwise incorrect. A review of the Exhibits to which the ALJ cites, (Exhibits 1F-5F, R. at 275-448) makes clear that no providers made mention of Plaintiff's inability to ambulate effectively. Rather, the medical records include numerous notations documenting precisely the opposite observation. *See e.g.*, R. at 283 ("normal gait"); R. at 285 (same); R. at 288 (same); R. at 290 (same); R. at 311 ("Tandem gait normal limits"); R. at 330 ("He ambulates with a steady

21

gait without any antalgia"); R. at 346 ("normal gait"); R. at 361 ("Independent with mobility. Stable gait pattern."); R. at 372 (same).

For the above reasons, the undersigned **FINDS** that substantial evidence supports the ALJ's determination that Plaintiff's impairments did not satisfy the requirements under Listing 1.04.

## E. The ALJ failed to satisfactorily explain his decision to discredit Plaintiff's testimony regarding his symptoms and functional limitations

In his decision, the ALJ specifically found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible," for reasons including the ALJ's observation that Plaintiff "could not adequately explain the number of surgeries he had, the doctor who performed those surgeries or why he no longer took medication for symptom control." R. at 63-64. Plaintiff argues that the ALJ's decision to discredit Plaintiff's testimony "failed to take into consideration [Plaintiff's] mental impairments and how it [sic] would impact his ability to recall information," reasoning that if the ALJ "had discussed mental impairments, it would logically flow that [Plaintiff] would have a difficult time recalling information." ECF No. 14 at 24.

The Commissioner argues that the ALJ's determination of Plaintiff's credibility was justified by "the inconsistencies in Plaintiff's testimony, the lack of significant abnormalities during his physical examinations and the inconsistencies in Plaintiff's treatment history," as well as the fact that Plaintiff was discharged from two separate pain management providers for narcotic abuse and his subjective allegations of pain. ECF No. 16 at 16. Further, the Court is obligated to give great deference to the ALJ's credibility determinations. ECF No. 16 at 16

22

(citing *Eldeco, Inc. v. N.L.R.B.*, 132 F.3d 1007, 1011 (4th Cir. 1997) ("When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.' Exceptional circumstances include cases where 'a credibility determination is unreasonable, contradicts other findings of fact, or is 'based on an inadequate reason or no reason at all.' Only in such a situation is a reviewing court 'free to review the record and independently reach [its] own conclusions.' Otherwise, careful fact-finding, such as that undertaken in this case, is entitled to deference.") (quoting NLRB v. Air Products & Chemicals, Inc., 717 F.2d 141, 145 (4th Cir. 1983); *NLRB v. McCullough Environmental Services, Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)) (internal citations omitted) (alteration in original).

Here, the Court notes that the ALJ's decision completely failed to analyze or discuss Plaintiff's documented anxiety, depression, difficulty in concentration, and difficulty in sleeping, then relied substantially on Plaintiff's confusing explanations about his past surgery, his intention to pursue a second surgical intervention, his doctors, and his medications during the hearing.[3] The dearth of information regarding Plaintiff's mental health impairments renders the Court incapable of engaging in its substantial evidence review. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling.") (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)). In light of the ALJ's failure to consider the purported mental health impairments (including whether or not they were severe), the Court concludes that the ALJ's basis for finding that Plaintiff was not credible is lacking and requires an adequate explanation which takes Plaintiff's mental health issues into account.

---

[3] The Court also finds that the ALJ's exchange with Plaintiff's counsel on this issue was also confusing.

Accordingly, remand is necessary because on the current record, the Court has no way of evaluating the basis for the ALJ's decision regarding Plaintiff's credibility. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'") (quoting *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985)). On remand, the ALJ "should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence," including the impact, if any, of Plaintiff's alleged mental health impairments. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citing *Hines v. Bowen,* 872 F.2d 56, 59 (4th Cir. 1989)).

## VI.  RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** the Defendant's Motion for Summary Judgment (ECF No. 15) be **DENIED**, Plaintiff's Motion for Summary Judgment (ECF No. 13) be **GRANTED** to the extent it seeks reversal and remand of the Commissioner's decision, and **DENIED** to the extent that it seeks entry of an order directing the award of benefits, and the Commissioner's decision be **VACATED** and **REMANDED.**

## VII.  REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of

24

Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for the Plaintiff and the Defendant.

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
January 16, 2016